The STATE of Ohio, Appellee,

v.

CROOKS, Appellant.*

[Cite as *State v. Crooks*, 152 Ohio App.3d 294, 2003-Ohio-1546.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020395.

Decided March 28, 2003.

---

* Reporter's Note: The court sua sponte removed this cause from the accelerated calendar. An appeal to the Supreme Court of Ohio is pending in case No. 2003-0695.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Timothy J. McKenna, Assistant Prosecuting Attorney, for appellee.

Christine Y. Jones, for appellant.

GORMAN, Judge.

{¶ 1} Defendant-appellant Rodney Crooks appeals from his convictions following a jury trial for aggravated robbery in violation of R.C. 2911.01(A)(1), aggravated burglary in violation of R.C. 2911.11(A)(3), and rape in violation R.C. 2907.02(A)(2). In his seven assignments of error, he contends as follows: (1) that his prosecution for the offenses was barred by the statute of limitations; (2) that retroactive application of the amendment to R.C. 2901.13(A)(3), effective March 9, 1999, enlarging the statute of limitations from six to twenty-two years for the indicted offenses, violates Section 28, Article II of the Ohio Constitution; (3) that his defense counsel was ineffective; (4) that his convictions were against the weight and sufficiency of the evidence; and (5) that his adjudication as a sexual predator was against the weight and sufficiency of the evidence. We affirm the judgment of the trial court.

{¶ 2} The victim of the charged offenses testified at trial that, on November 19, 1993, about 4:45 a.m., a man broke into her apartment in downtown Cincinnati while she slept. The intruder pulled off her blanket and placed a knife, obtained from her kitchen, to her throat. As she struggled to defend herself, she sustained severe cuts to her hands and fingers. The intruder then forcibly raped her. When he left the victim's apartment, her assailant took a portable stereo, a jacket, and the knife, which was never recovered.

{¶ 3} Police responded to the victim's 911 call. She was transported to University Hospital, where a doctor, assisted by a nurse, conducted a pelvic examination. The nurse collected the victim's underwear, saliva, and hair specimens and took vaginal and rectal swabs. The victim received stitches for the cuts to her fingers and hands. She subsequently underwent three months of therapy for her emotional injuries.

{¶ 4} The victim could not identify the intruder except for his race and height. The coroner's laboratory analyzed the evidence gathered at the hospital and froze the specimens taken from the victim, labeling them "unidentified suspect." No arrests were made.

{¶ 5} However, in 1997, by means of access to the FBI's computer-based DNA index system and a new method of DNA testing known as Short Tandem Repeat, the coroner's laboratory conducted new tests of unsolved case samples and searched DNA profiles. A semen sample taken from the victim matched Crooks's DNA profile, which had been collected in connection with another offense and placed in the statewide database of known offenders. For confirmation, the coroner's laboratory requested a second sample from Crooks, who was, at the time, incarcerated in the penitentiary for a burglary conviction. The second sample also matched his DNA profile. By a search warrant, police

obtained a saliva sample from Crooks that matched the specimens taken from the victim.

{¶ 6} At trial, the state's witness, a criminalist with the coroner's office, testified that the gene profile occurs at approximately "one and 25 quintillion, 330 quadrillion calculation or one in 54 quadrillion, 640 trillion African American individuals." The criminalist offered his opinion, based upon his calculations and the fact that "[t]here are approximately six billion people in the world, [that] unless Rodney Crooks has an identical twin, * * * the semen from this case came from him."

{¶ 7} Crooks's defense, outlined in his counsel's opening statement, was that the victim had consented to have sex with him. Crooks testified that the victim had invited him to her apartment and that "one thing [had] led to another." He said, "I attempted, you know, to seduce her and she willingly, she willingly accepted it." The victim testified that she did not know and had never met Crooks.

{¶ 8} The jury found Crooks guilty of count one, charging aggravated robbery, count four, charging aggravated burglary and accompanied by a physical-harm specification, and count seven, charging rape. The trial court dismissed counts five and six, pursuant to Crooks's pretrial motion, and the state dismissed by nolle prosequi counts two and three and the accompanying specifications. The trial court deferred sentencing for two weeks and ordered a presentence investigation report and a victim-impact statement. The trial court adjudicated Crooks a sexual predator following a sexual-offender-classification hearing. The court then sentenced Crooks to three indefinite ten-to-twenty-five-year terms of actual confinement, to run consecutively with an aggregate minimum sentence of fifteen years for the criminal convictions.

{¶ 9} In his first and second assignments of error, Crooks argues that because the statute of limitations for felonies was six years at the time of commission of the offenses for which he was indicted, retroactive application of the amended version of R.C. 2901.13(A)(3), effective March 9, 1999, which enlarged the statute of limitations to twenty-two years for these offenses, violated Section 28, Article II of the Ohio Constitution.

{¶ 10} A statute violates Section 28, Article II of the state Constitution, prohibiting the enactment of retroactive laws, if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489; see *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570. To determine whether criminal conduct occurring prior to the effective date

of a statute or amendment is subject to retroactive application, the Ohio Supreme Court has promulgated a two-part test: (1) is there a " 'clearly expressed legislative intent' that a statute apply retroactively" and, if so, (2) is the statute substantive or remedial? *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 10, citing *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570.

{¶ 11} Without a "clear indication" of a legislative intent that a statute be applied retroactively, it may be applied only prospectively. See id. at 440, 775 N.E.2d 829; see, also, R.C. 1.48. Section 3 of H.B. 49, effective March 9, 1999, which amended R.C. 2901.13, states that the amendment "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act." Because the prior six-year statute of limitations did not bar the prosecution of Crooks for his November 19, 1993 offenses before November 19, 1999, the clearly expressed legislative intent is that amended R.C. 2901.13(A)(3) be applied retroactively to the offenses in question.

{¶ 12} Remedial laws are "those laws affecting merely 'the methods and procedure[s] by which rights are recognized, protected and enforced, not * * * the rights themselves.' " (Citations omitted.) *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 15. Crooks attempts to distinguish *Walls*, contending that a statute of limitations is a substantive right, unlike the juvenile bindover statute, which is strictly procedural. There is clear authority, however, that "[s]tatutes of limitations are remedial in nature and may be generally classified as procedural legislation." *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 61 O.O.2d 295, 290 N.E.2d 181, paragraph one of the syllabus.

{¶ 13} Amended R.C. 2901.13(A)(3) does not redefine the offenses for which Crooks was indicted or increase the penalties. It only enlarges the time for prosecution to accommodate new technology that has been recognized by the General Assembly as scientifically reliable and relevant. See R.C. 2901.07 (requiring DNA collection from offenders sentenced to incarceration). The purpose of the statute of limitations is to prevent stale claims and to preserve evidence that is pertinent to the issues. See *Wargetz v. Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St.3d 15, 16–17, 11 OBR 49, 462 N.E.2d 1215. Where the evidence is preserved and remains fresh by a freezing process until it can be submitted for DNA analysis, the amendment of the statute of limitations to increase the period for prosecuting felonies was remedial, because the purpose of the statute of limitations was not affected.

{¶ 14} Accordingly, the General Assembly's retroactive application of R.C. 2901.13(A)(3), extending the statute of limitations from six to twenty-two years for the offenses at issue, was remedial and did not infringe on Crooks's substan-

tive rights in violation of Section 28, Article II of the Ohio Constitution. The first and second assignments of error are overruled.

{¶ 15} In his third assignment of error, Crooks argues that his counsel was ineffective for failing to challenge the chain of custody of the semen sample collected from the victim at the hospital.

{¶ 16} A reviewing court may not reverse a conviction for ineffective assistance of counsel unless the defendant shows first that counsel's performance prejudiced the defense so as to deprive the defendant of a fair trial. See *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674. There is a strong presumption that an attorney's representation fell within the "wide range of reasonable professional assistance," because there are many ways to provide effective counsel. Id. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674; see *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373.

{¶ 17} The burden was on the state to prove to a reasonable certainty that substitutions, alterations, or tampering with the semen and saliva samples did not occur before they were tested. See *State v. Moore* (1973), 47 Ohio App.2d 181, 183, 1 O.O.3d 267, 353 N.E.2d 866. But a challenge by the defense to the DNA test results would have been a specious strategy in light of Crooks's admission that he had had sex with, and thus, we may presume, had transferred his semen to, the victim. The third assignment of error is overruled.

{¶ 18} The fourth and fifth assignments of error, in which Crooks challenges the weight and sufficiency of the evidence, are equally untenable. Our review of the record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that Crooks's convictions for aggravated robbery, aggravated burglary, and rape must be reversed and a new trial ordered. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. The state made a persuasive case that the sexual activity was not consensual, as Crooks claimed, based upon the victim's testimony and the physical evidence, including the knife cuts to the victim's hands and fingers. The weight to be given this evidence and the credibility of the witnesses were primarily for the trier of fact to determine. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 19} The record also contains substantial, credible evidence from which to conclude that the state proved all elements of the charged crimes beyond a reasonable doubt. See *State v. Herring* (2000), 94 Ohio St.3d 246, 252, 762 N.E.2d 940. Accordingly, we overrule the fourth and fifth assignments of error.

{¶ 20} Finally, Crooks contends in his sixth and seventh assignments of error that the trial court's finding that he was a sexual predator was against the weight and sufficiency of the evidence.

{¶ 21} A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The state must prove by clear and convincing evidence that an offender is a sexual predator. See R.C. 2950.01(E) and 2950.09(B)(3); see, also, *State v. Eppinger* (2001), 91 Ohio St.3d 158, 165, 743 N.E.2d 881. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. [The degree of proof] is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Id. at 164, 743 N.E.2d 881, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118.

{¶ 22} In determining whether an offender, convicted of a sexually oriented offense, is a sexual predator, the trial court must consider the legislative guidelines in R.C. 2950.09(B)(2). But the weight, if any, assigned to each factor is within the trial court's discretion. See *State v. Thompson*, 92 Ohio St.3d at 587, 752 N.E.2d 276. In *Eppinger*, the Ohio Supreme Court established a model sexual-offender classification hearing, intended to ensure a fair hearing and to assist appellate review. This model requires the trial court to (1) create a clear, accurate, and comprehensive record for review, (2) appoint an expert, if necessary, to assist in the determination concerning the offender's likelihood of recidivism, and (3) discuss on the record the particular evidence and factors of R.C. 2959.09(B) upon which it has relied in determining the offender's likelihood of recidivism. See *State v. Eppinger*, 91 Ohio St.3d at 166, 743 N.E.2d 881; see, also, *State v. Lewis*, 1st Dist. No. C–010274, 2001-Ohio-3915, 2001 WL 1635763.

{¶ 23} At his sexual-offender classification hearing, Crooks was present with his counsel. The state offered into evidence the presentence investigation, the victim-impact statement, and Crooks's previous criminal record, which included felony convictions for aggravated burglary, a 1993 conviction for burglary and the subsequent revocation of probation for that offense, possession of criminal tools, theft, and convictions for various misdemeanors. Other than his own statement to the trial court, Crooks produced no evidence.

{¶ 24} The trial court accompanied its finding that Crooks was a sexual predator with the following tongue lashing: "You are a little creep who is a sexual predator. You're a rapist and a creep and deserve to be locked up forever

because you're rotten. You concocted this most ridiculous testimony. * * * I've considered under 2950.09(B)(3), all those factors. Of course, I think probably the nature of this charge and the breaking and entering—I mean, it's a classic kind of, you know, kind of like a Hollywood rape, the classic thing that all women are afraid of. * * * If that isn't a sexual predator, I don't know what it is. The Supreme Court, Court of Appeals would be idiots not to find him a sexual predator. They would be fools. * * * His criminal record is important too under B. And, again he's a burglar. He's done it before. It's shown that burglars are people that often commit rapes, just the whole nature of the offense. Based on that, I'm finding that he's a sexual predator."

{¶ 25} The trial court also wrote in its judgment entry adjudicating Crooks a sexual predator, under the section for findings, "classic rape, where the defendant broke into the apartment of a stranger & brutally raped and cut her. He had a prior conviction for aggravated burglary."

{¶ 26} The trial court's scolding of Crooks and the statements in the judgment entry do not rise to the level of the considered analysis contemplated in *Eppinger*. Although the trial court's feelings of outrage are justified, its rhetorical hyperbole tends to undercut the purpose of R.C. Chapter 2950, which, it should be remembered, is remedial, and not punitive, legislation. See *State v. Eppinger*, 91 Ohio St.3d at 165, 743 N.E.2d 881. To be sure, the nature of the offenses and Crooks's behavior were reprehensible, but the issue for the trial court was not whether Crooks was deserving of punishment, but whether the evidence clearly and convincingly demonstrated that, as an offender convicted of committing a sexually oriented offense in 1993, he was currently likely to reoffend. See id.

{¶ 27} Although the trial court departed from the *Eppinger* model, some of its stated reasons were consistent with the guidelines of R.C. 2950.09(B)(2). To determine whether the trial court's finding of the offender's likelihood of reoffending is supported by clear and convincing evidence, an appellate court must conduct its own review of "the evidence in the transcripts, victim impact statements, presentence investigation reports, prior history of arrests and convictions, age, etc., presented at the sexual offender classification hearing with respect to R.C. 2950.09(B)(2) factors." Id. at 162, 743 N.E.2d 881.

{¶ 28} Accordingly, we are able to distill from the record ample evidentiary material to justify the trial court's belief that Crooks was likely to engage in one or more sexually oriented offenses in the future. See R.C. 2950.09(E). The trial court correctly considered Crooks's prior criminal record, which included his probation violation. Crooks was also currently serving a prison term in the penitentiary. See R.C. 2950.09(B)(2)(b). The victim's testimony demonstrated

his cruelty against her, as Crooks broke into the privacy of her bedroom, forced himself upon her at knifepoint, and cut her in the course of the struggle. See R.C. 2950.09(B)(2)(i). Then after he had raped her, he stole her property before leaving her apartment. At the sexual-offender classification hearing Crooks, who had been twenty-six years old when he committed these offenses, maintained his innocence. He presented no testimony by a psychiatric or psychological expert and no evidence that he had attended sex-offender, behavior-modification, or rehabilitation programs of any kind while imprisoned. His trial testimony and his comments to the trial court at the sexual-offender-classification hearing were indicative of a person who functioned in a state of denial, with a total lack of remorse despite the physical and emotional injuries his offenses caused the victim.

{¶ 29} We find that there was clear and convincing evidence to support the trial court's finding that Crooks was a sexual predator. The sixth and seventh assignments of error are overruled.

{¶ 30} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

DOAN, P.J., and HILDEBRANDT, J., concur.