DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court following our October 16, 2002, decision granting appellant's application for reopening pursuant to App.R. 26(B) based upon a claim of ineffective assistance of appellate counsel on direct appeal. For the reasons that follow, this court finds that appellant did not receive ineffective assistance of appellate counsel and affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} "The trial court erred in denying defendant-appellant's motion to dismiss the indictments based on the running of the statute of limitations.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} "The trial court erred in denying defendant's motion to dismiss due to the `speedy trial' violation.
 {¶ 7} "Assignment of Error No. 3
 {¶ 8} "The trial court erred to the prejudice of the defendant in failing to enter into evidence the original fire investigation report when the witness who prepared the report was testifying.
 {¶ 9} "Assignment of Error No. 4
 {¶ 10} "The trial court erred in permitting testimony regarding defendant's alleged `prior bad acts' thereby depriving the defendant of due process and the right to a fair trial.
 {¶ 11} "Assignment of Error No. 5
 {¶ 12} "The trial court erred in denying defendant's motion for acquittal as the evidence was legally insufficient to convict the defendant and the verdict was against the manifest weight of the evidence."
 {¶ 13} The facts that are relevant to the issues raised on this appeal are as follows. On December 29, 2000, appellant was indicted on one count of involuntary manslaughter and one count of aggravated arson in connection with a fire on August 20, 1993, that took the life of ten-year-old Alicia Nour, who was unable to escape from a second-story apartment on Broadway Avenue in Toledo. Investigators initially had concluded that the fire was an accident, but after additional information about the fire was discovered by the police in August 2000, appellant was charged with the two offenses. In May 2001, appellant was tried and convicted as to both counts. Appellant was sentenced to terms of seven to 25 years on each count, with the sentences to run consecutively. Appellant appealed that judgment and on June 7, 2002, this court affirmed the conviction. State v. Barker, 6th Dist. No. L-01-1290, 2002 Ohio 2801. On September 4, 2002, appellant filed an application for reopening. On October 16, 2002, this court found that there was a genuine issue as to whether he was deprived of the effective assistance of appellate counsel and, accordingly, the motion for reopening was granted.
 {¶ 14} In his first assignment of error, appellant asserts that his motion to dismiss the indictments should have been granted because the indictments were barred by the six-year statute of limitations set forth in R.C. 2901.13 at the time of the commission of the offenses for which he was indicted. The fire which took the life of Alicia Nour occurred on August 20, 1993, but it was not until August 2000 that investigators learned of new information about the fire which led to appellant's arrest on December 22, 2000.
 {¶ 15} The statute of limitations as it existed at the time of the fire would have run on August 20, 1999. However, on March 9, 1999, five months before the original statute of limitations would have expired, the legislature passed an amended version of R.C. 2901.13 which extends the statute of limitations for the prosecution of certain felonies, including aggravated arson and involuntary manslaughter, to 20 years after the offense is committed. R.C. 2901.13(A)(3)(a). As the Court of Appeals for the First District of Ohio noted in State v. Crooks, 152 Ohio App.3d 294, 2003 Ohio 1546, Section 3 of H.B. 49, which amended R.C. 2901.13
effective March 9, 1999, states that the amendment "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act." Because the earlier version of R.C. 2901.13 had not yet barred the prosecution of appellant for the August 20, 1993 offenses as of March 8, 1999 (one day before the effective date of the amendment), the new 20-year statute of limitations applies to appellant's case. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 16} In his second assignment of error, appellant asserts that he was denied his right to a speedy trial. According to appellant's calculations, he was incarcerated for a total of 78 days over the statutory 270-day limit for felonies. The state responds that the total number of days that could be charged to the state between arrest and trial was only 81, which when multiplied by 3 pursuant to statute, adds up to only 243.
 {¶ 17} This court is required to independently review the issue of whether an accused was deprived of his right to a speedy trial, strictly construing the law against the state. Brecksville v. Cook (1996),75 Ohio St.3d 53, 57. See, also, State v. High (2001), 143 Ohio App.3d 232,242.
 {¶ 18} Pursuant to R.C. 2945.71, a person charged with a felony shall be brought to trial within 270 days of his arrest. Further, each day an accused is held in jail on the pending charge is counted as three days for purposes of computing the time limit. R.C. 2945.71(E). The time in which an accused must be brought to trial may, however, be tolled under certain conditions specified in R.C. 2945.72(D). Those which are relevant herein include "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding or action made or instituted by the accused" and "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." In such cases, the time is not tolled absolutely, but is extended by the time necessary in light of the reason for the delay. A trial court is permitted to sua sponte grant a reasonable continuance of time which is not attributed to either party. The reasonableness of a continuance in this situation depends upon the facts and circumstances of the case. State v. Saffell
(1988), 35 Ohio St.3d 90, 91. In determining such reasonableness, however, R.C. 2945.72 must not be interpreted so broadly as to render the speedy-trial provision meaningless. State v. Lee (1976), 48 Ohio St.2d 208,209.
 {¶ 19} Since appellant was in custody from his arrest on December 22, 2000, until trial on May 16, 2001, each day that passed counted as three pursuant to R.C. 2945.71(E) and (C)(2). Therefore, the state had only 90 days from arrest in which to bring him to trial. According to our calculations, 145 calendar days passed between arrest and the first day of trial, or 55 days more than allowed by statute. If any of those days can be attributed to delay instituted by appellant, a continuance granted on appellant's motion, or a reasonable continuance granted sua sponte by the trial court, then those days effectively extend the time during which he must be brought to trial.
 {¶ 20} This court has carefully reviewed the record of proceedings in the trial court to determine whether appellant was brought to trial in a timely manner. The running of time from arrest to trial was tolled as follows. On January 9, 2001, arraignment was continued until January 18, pursuant to appellant's request, thereby tolling the time for 9 days. On January 18, 2001, upon appellant's motion, the case was continued for a competency evaluation, thereby tolling the time for 33 days until the competency hearing was held on February 20, 2001. On March 1, 2001, appellant filed a motion to dismiss. The trial court denied the motion on March 22, 2001. Time was tolled in that instance for 21 days. Appellant requested numerous other continuances during the months of March and April, but even without taking those delays into consideration, time was tolled as set forth above for a total of 63 days. When counted against the 145 days from arrest to trial, the 63 days attributed to appellant's motions and requests reveal that he was brought to trial in 82 days, well within the statutory limit. Based on the foregoing, we find that appellant was brought to trial in a timely manner and his second assignment of error is not well-taken.
 {¶ 21} In his third assignment of error, appellant asserts that the trial court erred by not allowing into evidence the original fire investigation report although the individual who prepared it was testifying. Upon appellee's objection to appellant's witness reading from the report, which appellee argued contained information obtained from various other investigators and witnesses, the trial court ruled that it was hearsay and therefore not admissible. After a discussion at the bench, the trial court advised counsel that he could question the witness about his initial investigation and conclusions as well as his recent conclusions but that the report could not be admitted into evidence.
 {¶ 22} We note that the admission or exclusion of evidence is a matter within the trial court's discretion and such rulings should not be disturbed on appeal unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby. State v. Issa,93 Ohio St.3d 49, 64, 2001 Ohio 1290, citing State v. Maurer (1984),15 Ohio St.3d 239, 265. In the case before us, we must accept the trial court's ruling on this matter as the report in question is not a part of the record. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 23} In his fourth assignment of error, appellant asserts that the trial court erred by allowing prior acts testimony to support the state's claim that appellant had a history of setting fires. Upon further review of the record, however, we find that this precise claim was raised on direct appeal and found to be without merit. Accordingly, appellant's fourth assignment of error is not well-taken.
 {¶ 24} In his fifth assignment of error, appellant asserts that the trial court erred by denying his motion for acquittal and that the verdicts of guilty as to involuntary manslaughter and aggravated arson were against the weight and sufficiency of the evidence.
 {¶ 25} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence as follows: "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982),457 U.S. 21, 42.
 {¶ 26} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 27} "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 28} Appellant was convicted of violating R.C. 2903.04(A), involuntary manslaughter, which provides that "no person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2909.02(A)(1), aggravated arson, states that " (A) No person, by means of fire or explosion, shall knowingly do any of the following: (1) Create a substantial risk of serious physical harm to any person other than the offender ***."
 {¶ 29} Upon reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of both crimes proven beyond a reasonable doubt.
 {¶ 30} Detective Steve Forrester with the Toledo Police Department testified that he arrested Danny Frost in August 2000, in connection with a series of robberies and that Frost told him that he had information concerning an old murder. Frost told Detective Forrester that appellant had started the fire on August 20, 1993. Investigators then conducted a series of interviews with Frost to determine whether the information was consistent with evidence they already had regarding the fire.
 {¶ 31} Derick Newlan, an acquaintance of appellant, testified that on the night of August 20, 1993, he and appellant went to a convenience store on Broadway to buy cigarettes. As they walked down Broadway, appellant tried doorknobs on the buildings they passed. When appellant found one that was open, he went in. Newlan stood in the doorway and watched as appellant set fire to cardboard, paper and curtains in a vacant storefront below the apartment where Alicia Nour and several other people were sleeping. Newlan admitted that he did not attempt to stop appellant from setting the fire. Newlan further testified that as appellant set things on fire he talked about burning the building down. As appellant ran out of the building, Newlan ran after him and appellant commented that the fire would be on the news that night and in the paper the next day. Alice Frost, appellant's grandmother, testified that the morning after the fire appellant told her that he had been out with Derick the night before and that Derick had been setting fires.
 {¶ 32} Danny Frost, appellant's uncle, testified that he and appellant had three conversations about the fire. He first stated that sometime after 1997, appellant told him on two occasions that Newlan had set the fire while appellant was using a pay phone across the street. He further testified that on a third occasion sometime in the summer of 2000 appellant said, "You don't know what it feels like to kill somebody." Frost testified that he asked his nephew if he knew how it felt and appellant responded that he did. Appellant then told Frost about setting the fire in August 1993. Frost testified that appellant told him that he sometimes lies awake at night thinking about the little girl who died in the fire.
 {¶ 33} Based on the foregoing, we find that that any rational trier of fact could have found based upon the testimony presented at trial that appellant set the fire on August 20, 1993, which caused the death of Alicia Nour. Accordingly, we find that there was sufficient evidence upon which the jury could have relied in finding appellant guilty of aggravated arson and involuntary manslaughter.
 {¶ 34} Additionally, upon review of the entire record, and after weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving conflicts in the evidence, we find no indication that the jury lost its way or created a manifest miscarriage of justice by finding appellant guilty of aggravated arson and involuntary manslaughter.
 {¶ 35} Lastly, as to the motion for acquittal, such a request will be sustained if the evidence presented is insufficient as a matter of law to permit a conviction. Crim.R. 29(A). As we have already determined that the evidence was sufficient to support appellant's convictions, we find this argument to be without merit.
 {¶ 36} Based on the foregoing, we find appellant's fifth assignment of error not well-taken.
 {¶ 37} On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.