OPINION
{¶ 1} Ronald E. Koerner is appealing a decision of the Montgomery County Court of Common Pleas overruling his motion to dismiss along with his subsequent conviction and sentence for gross sexual imposition.
 {¶ 2} Koerner was indicted by the Montgomery County Grand Jury on June 28, 2002, on one count of gross sexual imposition in violation of R.C. 2907.05(A)(3). The underlying incident, occurring sometime in September of 1985, involved Koerner's five-year old niece.
 {¶ 3} Koerner filed a motion to dismiss on July 25, 2002, asserting that the statute of limitations had expired and therefore the offense was not brought within the allotted time. A hearing was held on September 13, 2002 and November 15, 2002, with the focus being whether a "responsible adult" under R.C.2151.421 had knowledge of the corpus delicti of the offense six years prior to March 9, 1999, the date on which the statute of limitations was amended and extended to twenty years.
 {¶ 4} The victim testified at the hearing. She was born on January 10, 1980, and sometime in September of 1985, Koerner had sexually abused her. The victim remained silent about the incident until December 25, 1992, when she disclosed the incident to her mother. The victim's mother confronted Koerner and informed various relatives of the incident. It appears as though the victim's mother did not contact law enforcement authorities, however sometime that year she sought counseling for the victim. The victim explained that counseling was unsuccessful because, at the time, she was twelve years old and was very embarrassed by the incident, and thus she had refused to speak about it with anyone.
 {¶ 5} The victim's mother testified that she did disclose specific information about Koerner's actions to a person working in the counseling center, however she could not recall the name of the center, the name of the individual with whom she spoke, or the profession of the person with whom she disclosed the information. Consequently, no records were produced at the hearing showing that the victim or her mother had disclosed the information to a professional counselor or social worker.
 {¶ 6} The victim did not disclose the abuse to anyone else until January of 1998, when she attended marital counseling in Titusville, Florida. She contacted the Northridge Sheriff's Department in March or April of 2002. On June 28, 2002, the Montgomery County Grand Jury indicted Koerner on one count of gross sexual imposition.
 {¶ 7} Koerner testified at the hearing. He stated that after being confronted by the victim's mother, he sought counseling at Positive Focus. His first session with Michael King, a licensed social worker, was on January 18, 1993. Koerner claims that he discussed the incident with King during his first session, providing King with the name of, or at least his relationship with, the victim. Koerner stated that when he told King of the incident, King had stated, "I have to report this." Koerner pled with him to "wait until you hear me out first?" King's hand was on the telephone, ready to call the authorities when Koerner asked, "Can you hear me out first and then if you feel like you need to report me, then do so?" King agreed. Koerner continued to attend counseling on a somewhat regular basis for the remainder of the year. At no point did King report the abuse, even after his counseling relationship with Koerner had terminated.
 {¶ 8} King, when called as a witness at the hearing, asserted his Fifth Amendment rights and refused to answer questions regarding the nature of the meeting with Koerner or whether Koerner had disclosed information to him that would have triggered the reporting requirements under R.C. 2151.421. Incidentally, Positive Focus has since closed, and the unauthenticated records, which were admitted into evidence at the hearing, contained scant information about the content of King's sessions with Koerner. The records do include an intake assessment dated January 4, 1993, that states Koerner had "abused a child about eight years ago," and that Koerner "[w]ants to make things right." King's documentation from his first session with Koerner on January 18, 1993 includes "eight years ago he molested his niece, three to four times." On February 18, 1993, the notes read "sexually molested niece," "eight years old," "three or four times," and "fondling." The notes from the following sessions focused mainly upon Koerner's conflicts within his immediate family rather than the incident at issue in this case.
 {¶ 9} Following the hearing, the trial court overruled Koerner's motion to dismiss. Koerner filed a motion for reconsideration, which the trial court denied. Koerner entered a no contest plea on January 15, 2003. He was sentenced to five years community control and was ordered to register as a sexual offender.
 {¶ 10} Koerner now appeals, asserting one assignment of error:
 {¶ 11} "The Trial Court erred in overruling Defendant's Motion to Dismiss on grounds that the Indictment was barred by the Statute of Limitations."
 {¶ 12} In his assignment of error, Koerner argues that the State violated his constitutional rights by prosecuting him for gross sexual imposition beyond the statute of limitations prescribed by R.C. 2901.13(A)(1). He argues that, at the time the offense was disclosed to a "responsible adult" under R.C.2151.421, the statute of limitations was six years, but that he was not indicted until June 28, 2002, over three years after that six-year period had expired.
 {¶ 13} At the time Koerner disclosed the information to King in January of 1993, the statute of limitations for a felony that was not murder or aggravated murder was six years. R.C.2901.13(A)(1). R.C. 2901.13(F) provided that the statute of limitations did not run "during any time when the corpus delicti remains undiscovered." The corpus delicti of a crime involving the sexual abuse of a minor is discovered when a "responsible adult" under R.C. 2151.421, who has a legal duty to report the abuse, has knowledge of the act and has knowledge of the criminal nature of the act. State v. Hensley (1991), 59 Ohio St.3d 136,571 N.E.2d 711. A responsible adult includes a "person engaged in social work or the practice of professional counseling," such as King. R.C. 2151.421(A)(1)(b).
 {¶ 14} The complexity of this case is due to the amendment of R.C. 2901.13 on March 9, 1999. At that time, the legislature amended R.C. 2901.13 to extend the time in which a defendant may be brought to trial for certain offenses, such as gross sexual imposition, from six to twenty years. As the court noted inState v. Crooks, 152 Ohio App.3d 294, 787 N.E.2d 678,2003-Ohio-1546, ¶ 11, the amendment of R.C. 2901.13 under Section 3 of H.B. 49 "applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act." See, also, State v. Barker, Lucas App. No. L-01-1290, 2003-Ohio-5417, ¶ 15.
 {¶ 15} In this case, the trial court found that Koerner's request for King to "hear [him] out," occurred over "several sessions," such that King did not have knowledge of the act and knowledge of the criminal nature of the act until a session which occurred after March 9, 1993. In essence, the trial court found that Koerner's request of King to "hear [him] out" waived the statute of limitations.
 {¶ 16} We regretfully disagree with the trial court's reasoning. We find no precedent under Ohio law upon which to support the trial court's decision that Koerner had "waived" the statute of limitations in this case. While some courts have found that a defendant can waive a statute of limitations period, it is more in the confines of the result when a defendant pleads guilty to a charge after the statute of limitations period has expired. See State v. Collins, Stark App. No. 2001CA00066, 2002-Ohio-4668; State v. Farley (May 5, 1999), Knox App. No. 98-CA-25; State v. Brown (1988), 43 Ohio App.3d 39,539 N.E.2d 1159. We have found no cases, such as this, where the defendant has sought treatment and requested that the "responsible adult" postpone alerting the proper authorities, resulting in an expiration of the statute of limitations period.
 {¶ 17} We have found federal caselaw supporting the concept of a defendant's waiver of a statute of limitations period. See, generally, United States v. Gallup, 812 F.2d 1271, 1280 (10th Cir. 1987), United States v. Wild, 551 F.2d 418, 424-425
(D.C. Cir. 1977), United States v. Del Percio, 870 F.2d 1090,1093-94 (6th Cir. 1989). Unfortunately, these cases are easily distinguishable from the instant case, in that they involve a specific waiver, oftentimes a written waiver, of the statute of limitations regarding a specific charge for a specific period of time.
 {¶ 18} This is not the case here. We do not have proof that Koerner specifically waived the statute of limitations period regarding the specific charges for a specific period of time. Instead, the record reveals that during the first counseling session on January 18, 1993, Koerner requested that King not report him. This request does not equate to a waiver of the statute of limitations for his charges for any particular time.
 {¶ 19} What makes this situation more troublesome is that King asserted his Fifth Amendment privileges when questioned about the type of information he gained during the first counseling session. The records from Positive Focus, which were admitted into evidence but were not properly authenticated at the hearing, provide little information to help determine what criminal activity, if any, King had knowledge of during that first counseling session on January 18, 1993, or what activity he had knowledge of by March 9, 1993. Additionally, we have testimony from Koerner that during the first counseling session, he had disclosed the basic facts to King regarding the molestation of his niece. What is clear from the unauthenticated records is that King was aware on January 18, 1993 that Koerner had molested a niece eight years prior to his visit, and that he had done so three or four times. Moreover, the act of King placing his hand on the phone, explaining to Koerner that he had an obligation to report him to law enforcement authorities, is evidence that King was aware of the crimes which Koerner had committed, and that King was aware of the criminal nature of Koerner's actions. Despite this knowledge, King failed to report the criminal activity prior to the expiration of the statute of limitations.
 {¶ 20} We also note that the trial court found support for its decision based upon a defendant's ability to toll a statute of limitations by purposely avoiding prosecution. Prima facie evidence of a defendant's purposeful avoidance of prosecution is where a defendant has "absented himself from this state or concealed his identity or whereabouts." State v. Price (Dec. 22, 1998), Franklin App. No. 98AP-428. See, also, State v.Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122 (statute of limitations tolled due to defendant's purposely avoiding prosecution by providing police with false names and faking handwriting samples, and moving out of the state within a year of the offense); State v. Williams (Apr. 20, 1994), Medina App. No. 1738 (affirming a trial court's decision to toll statute of limitations when defendant changed his name, lived in Arizona, New York, New Jersey, Massachusetts, and also had temporary residence in several other states).
 {¶ 21} The record in this instance holds no evidence that Koerner fled the state, changed his name or otherwise purposely avoided prosecution. We thus find that no tolling of the statute of limitations resulted from Koerner's purposely avoiding prosecution, and we consequently do not find this to be a basis for finding the statute of limitations waived.
 {¶ 22} As a final matter, we must address the State's argument that King was not a "responsible adult" under R.C.2151.421 because he failed to report the abuse. The State contends that for this reason, the statute of limitations did not begin to run until the victim confided the abuse during marital counseling in January of 1998.
 {¶ 23} We find this theory to be contrary to Ohio law. InState v. Hensley, (1991), 59 Ohio St.3d 136, 139-140, the court specifically pointed out the following:
 {¶ 24} "The statute sets forth specific requirements, limitations, and procedures to be followed in reporting and investigating child abuse and neglect. We find that R.C. 2151.421
provides an appropriate list of responsible adults who, upon obtaining knowledge of possible child abuse, are charged by operation of law with reporting said abuse to the proper authorities. Thus, we hold that for purposes of R.C. 2901.13(F), the corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act."
 {¶ 25} The Hensley court did not specify that, to qualify as a "responsible adult," a person must first report the abuse to the proper authorities. Instead, it is the knowledge of the crime and the knowledge of the criminal nature of the act that is important, along with the specification of being a named person under the statute. While we agree that King did not act responsibly, and most likely breached his duty under R.C.2151.421, based upon the above-mentioned reasons, we must reject the State's argument that King was not a "responsible adult" under the statute, as he did have knowledge of the crime and its criminal nature under R.C. 2151.421.
 {¶ 26} In conclusion, because the corpus delicti of the crime was discovered in January of 1993 and because tolling provisions to R.C. 2901.13(F) and (G) do not apply, the trial court did err in refusing to dismiss the gross sexual imposition charge against Koerner as being barred by the statute of limitations.
 {¶ 27} Regrettably, we are constrained to sustain Koerner's assignment of error and reverse this case, vacating Koerner's conviction, notwithstanding the overwhelming evidence of Koerner's guilt. While it may have been acceptable for King to not interrupt the first counseling session with Koerner and telephone the authorities, we do not see a reason for King to have put off his duty to report Koerner's criminal activity after the close of the first session. It was King's failure to report within the next six years that brings us to this conclusion.
 {¶ 28} The judgment of the trial court is reversed and Koerner's conviction is vacated in accordance with this opinion.
Fain, P.J. and Wolff, J., concur.