OPINION
{¶ 1} Defendant-appellant Gregory Ashbrook appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of attempt to commit rape, a felony of the second degree, in violation of R.C. 2923.02 (A). He further appeals his adjudication as a sexual predator. The plaintiff-appellee is the State of Ohio.
 {¶ 2} The Internet Crimes Against Children Task Force conducted an "on-line crimes" investigation targeting Internet chat rooms. As part of the investigation, Detective Bobby Grizzard, created a profile for a fictional mother with the screen name "Lori 4-Laci". Using this screen name and a fictitious profile, Grizzard entered Internet chat rooms on America Online (AOL). The profile attached to the screen name described "Lori", the purported poster of the messages, as salesperson located in Northeastern Ohio. A personal message accompanied the profile, and stated: "Like mother, Like daughter. Bring a child up in the way you want them to be, show them the way of life, and some of the hard things in life can be fun, fruitful, and exciting." The profile was visible to AOL members who clicked on the screen name "Lori 4 Laci."
 {¶ 3} One chat room in which "Lori 4 Laci" was posted is entitled "Take Daughter to the Park." Detective Grizzard received hundreds of responses to this profile and others like it; most were harmless, non-sexual responses from people who wanted to talk about miscellaneous topics. On September 25, 2003, Detective Grizzard was contacted by someone with the screen name "OBFUMAN."
 {¶ 4} The first contact from OBFUMAN asked how old Laci is, and stated he would love to chat. Detective Grizzard replied, "Laci is 12." OBFUMAN responded, "nice age; what do you like to do together?" Grizzard replied, "everything." OBFUMAN stated that he would love to meet both mom and daughter, and inquired as to their location in Northeastern Ohio. OBFUMAN stated that his screen name stood for "Old Bald Fat Ugly Man." OBFUMAN asked "What kind of fun do you both like," and Grizzard replied, "Any."
 {¶ 5} Detective Grizzard, posing as "Lori" pressed appellant stating that he asked "Laci's" age, but still had not told her exactly what he was looking for. Appellant responded that he wanted to meet and when would that be possible. He further stated that he wanted to meet for the purposes of "fun and pleasure" with both of them. He stated that he wanted to meet for the purpose of "SREX" [sic]. Appellant used explicit language, stating that he "liked to lick and to fuck." "Lori" replied, "We can do that," and told appellant to make the arrangements. When appellant said he was cautious about hotels, "Lori" suggested the Hampton Inn in Massillon.
 {¶ 6} Conversations between "Lori" and appellant continued after the initial discussion on September 25, 2003. All conversations were between appellant and "Lori;" "Laci" did not converse with appellant on line or in person. Several times appellant asked "Lori" whether she was a law enforcement officer, which Grizzard denied. Appellant also stated that he was not involved in law enforcement. Eventually, photos were exchanged, also at appellant's request. The photo provided for "Lori" was that of an undercover female police officer; the photo of "Laci" was of another undercover police officer as she appeared at age 12.
 {¶ 7} The conversations between appellant and "Lori" were explicit in regard to what sexual conduct appellant expected. "Lori" asked what acts he wanted from "Laci" and appellant responded that she should tell him whatever they were willing to do and he would "respect their limits." Appellant stated that he wanted them both. "Lori" told him that she needed to know what he wanted from "Laci" so that she could prepare her, and stated that "back door is out for [Laci]," meaning anal intercourse. Appellant stated that he understood. The conversation touched upon sex toys, or "gadgets," and the expectation that appellant would use condoms with "Laci" but not with "Lori". Appellant stated that he wanted to make them both smile, and "Lori" responded, "hey, no rough sex with my daughter." Appellant's response was "no, mutual fun and pleasure."
 {¶ 8} A "meeting" was initially arranged for October 20, 2003, but "Lori" contacted appellant to cancel, and told appellant to let "her" know what he was expecting and possibly reschedule. Appellant responded that he wondered about meeting Saturday evening, and suggested the three go to dinner, to get to know each other, and then see what else they would enjoy.
 {¶ 9} On October 28, 2003, "Lori" and appellant discussed the details of a meeting planned for November 1. Appellant stated that they could go to dinner before sex, and "Lori" suggested the Olive Garden Restaurant.
 {¶ 10} Appellant requested another meeting with a fictional mother and daughter, and arrangements were made for a meeting on November 1, 2003 at the Hampton Inn in Massillon. "Lori" and appellant discussed protection, with appellant understanding he was required to use a condom for any intercourse with "Laci" but not with "Lori." The conversation with appellant indicated he was coming to Massillon to have sexual intercourse with "Laci," and that he hoped "Lori" would also participate.
 {¶ 11} Appellant also had two telephone conversations with "Lori" in reality an undercover police officer, Kathy Bickford. The telephone calls were recorded. One conversation took place the day before the planned meeting. During this conversation, appellant again mentioned something to the effect of being respectful of "Lori's" limits. The second conversation occurred on November 1, 2003, the day of the planned meeting at the Hampton Inn, when appellant called "Lori" to let her know he was in Wooster and would soon be in town.
 {¶ 12} Shortly thereafter, appellant arrived at the Hampton Inn for the rendezvous. Detective Grizzard was behind the counter at the registration desk, and watched as appellant requested a room with a king size bed and paid in cash. Appellant then went up to the room, and came back down and went to his van. Appellant was arrested as he entered the van.
 {¶ 13} A subsequent search of appellant's van yielded an overnight kit, a box of condoms, two roses, one pink and one red, and a security lock for the hotel door. These items were in a Wal-Mart bag.
 {¶ 14} Detective Grizzard spoke with appellant shortly after his arrest. He indicated that he came to Massillon to have dinner with "Lori" and "Laci," and that he did not know their last names. He admitted that he had operated through the screen name OBFUMAN, and that he was the only person who had engaged in the conversation with "Lori" as OBFUMAN. Detective Grizzard asked appellant whether he knew how old "Laci" was, and appellant stated that she was 12. Detective Grizzard asked how old "Laci" appeared to be in the photo he had received, and appellant stated "10, 11, or 12." When asked what his intentions were, appellant replied that he did not know whether he would have been able to go through with having sex with "Laci."
 {¶ 15} Appellant filed a motion to suppress virtually all of the evidence the police had obtained, including items seized from appellant's van and the hotel room in a statement to the police, recorded telephone conversations, e-mails, and instant messages between appellant "Lori." A hearing was held, after which the trial court sustained the motion to suppress the items found in the hotel room, but overruled the motion as to the rest of the evidence. Appellant also filed a motion to dismiss in which he argued the criminal charge had no merit because no actual child victim existed and the conversations between "Lori" and appellant were protected speech. The trial court overruled the motion to dismiss.
 {¶ 16} The case proceeded to a trial by jury, and appellant was found guilty as charged. A sentencing hearing was held, and appellant was sentenced to the maximum prison term of eight years and further was labeled a sexual predator. Appellant timely appeals from his conviction and sentence raising the following five assignments of error for our consideration.
 {¶ 17} "I. The appellant's conviction was against the manifest weight of the evidence.
 {¶ 18} "II. The trial court erred in denying appellant's motion to suppress.
 {¶ 19} "III. The trial court erred in denying appellant's motion to dismiss.
 {¶ 20} "IV. The trial court erred in finding that the appellant is a sexual predator.
 {¶ 21} "V. The trial court erred in imposing the maximum sentence."
 I. III. {¶ 22} In his first assignment of error appellant maintains that his conviction on one count of attempted rape is against the manifest weight of the evidence. In his third assignment of error appellant maintains that the trial court erred in overruling his motion to dismiss because there was no actual child involved and, further his conversations are protected expressions of Free Speech. Because these two assignments of error are interrelated we shall address them together.
 {¶ 23} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 24} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 25} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 26} Appellant is arguing that he did not go beyond the mere preparation stage; he did not take a substantial step toward the commission of the offense.
 {¶ 27} To find the appellant guilty of attempted rape in violation of R.C. 2907.02(A) (1)(b) as alleged in the indictment the trier of fact would have to find that appellant attempted to engage in sexual conduct with another, not his spouse, and that the complaining witness is less than thirteen years of age.
 {¶ 28} R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 29} R.C. 2923.02(A) provides a definition of attempt: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 30} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. State v. Woods (1976), 48 Ohio St.2d 127,357 N.E.2d 1059, paragraph one of the syllabus, overruled in part byState v. Downs (1977), 51 Ohio St.2d 47, 364 N.E.2d 1140. In defining substantial step, the Woods Court indicated that the act need not be the last proximate act prior to the commission of the offense. Woods at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." Woods, supra at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted.
 {¶ 31} R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."
 {¶ 32} That a dangerous crime against children could not have been completed because no twelve year old child was actually involved is of no consequence; "It is no defense to a charge under [R.C. 2923.02(A)] that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be." R.C.2923.02(B). All that is required to commit an attempted rape against a child under the age of thirteen is for the perpetrator to believe that the intended victim is a minor under thirteen years of age, and then to take any substantial step in a course of conduct planned to culminate in the commission of the crime. As the federal courts have noted when addressing similar claims: "[t]he attempt provision here is no different than an attempted solicitation of prostitution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct — indeed, such sting operations are "common practice." Rodriguez v. Panayiotou, 314 F.3d 979, 984 (9th Cir. 2002).
 {¶ 33} "So too have undercover officers been forced to resort to extensive investigation and sting operations to ferret out pedophiles who troll the Internet for minors. As [appellant] interprets the statute, detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex. Taking such a restrictive view of the statute would frustrate its purpose. Indeed, police preventative measures such as the sting operation conducted here would come at the cost of either rarely securing a conviction or putting an actual child in harm's way. In that scenario, the child molester gains at the tremendous expense of the child, a result sharply at odds with the statute's text and purpose." State v. Meeks (9th Cir 2004), 366 F.3d 705, 718-719.
 {¶ 34} Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. State v. Group (2002), 98 Ohio St.3d 248, 262,2002-Ohio-7247 at ¶ 100, 781 N.E.2d 980, 996.
 {¶ 35} The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. State v. Garner (1995), 74 Ohio St.3d 49, 60,1995-Ohio-168, 656 N.E.2d 623, 634; State v. Wallen (1969),21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722.
 {¶ 36} Appellant first argues that he did nothing indicative of a substantial step toward engaging in sexual conduct with a 12-year-old. Appellant argues that all he did was commit to having dinner and obtaining a hotel room. Appellant thus concludes that there was insufficient evidence from which to conclude that he took a substantial step toward the commission of the crime. We disagree.
 {¶ 37} The circumstances here show that Appellant was not merely making comments or statements with no intent to carry out the sexual acts he suggested.
 {¶ 38} Appellant's conduct can be divided into two categories. First, appellant communicated over the Internet and through e-mail with Detective Grizzard, who was posing as the mother of a twelve-year-old female. During such communications, appellant indicated his desire to have a sexual encounter with the minor and eventually enticed her mother to agree to accompany her daughter to meet him at a prearranged meeting place. Furthermore, appellant sought to obtain the mother's permission and, preferably, her complicity. Pictures were exchanged. The photo of the minor was an actual picture of an undercover police officer as she appeared at age twelve. (T. at 134-36, 148).
 {¶ 39} The second act appellant took, however, i.e., the specific actof driving to the agreed-upon meeting place, is the corroborativeaction. Such conduct goes beyond remote preparatory activity andunequivocally confirms a criminal design. Appellant communicated hisdesire to have sexual contact with a person he thought was atwelve-year-old female. When asked what he expected of the childappellant responded: "I love oral I like to kiss, suck and lick I like tobe sucked love to be ridden and like to be on top or doggy . . . yes,would love both of you on top and oral . . ." (Instant Message, 10-27-03 at 03:39 p.m.; T. at 184). He arranged to meet the minor and her mother at a specific time and place. Appellant indicated that he was cautious of hotels and wanted a safe place to meet. (Instant Message, 09-25-03 at 04:24 p.m; T. at 170). Appellant inquired several times as to whether the individual he was communicating with was a law enforcement officer. (Id.). He informed the mother that he would bring condoms and alcoholic beverages to the encounter. (Instant Message, 10-28-03 at 10:31 p.m.). A travel hotel door security lock, pink rose, red rose and condoms were found in appellant's van. (T. at 142-44). Appellant acknowledged that what he was doing was unlawful: "I will tell you that my biggest fear is that this is a sting to arrest me I am hoping that it is not . . ." (Id.). Appellant called to let the mother and child know that he was on his way to the motel. (T. at 203). Appellant then traveled to the rendezvous at the appointed time, and with the promised items. Appellant paid for a hotel room which included a king size bed. (T. at 141, 143-44, 203). Given that the minor did not actually exist, appellant took every possible step he could have taken in order to commit the offense of statutory rape.
 {¶ 40} Likewise, the Tennessee Supreme Court came to the same conclusion in a sting operation involving a young male: "[t]he evidence in this case taken in a light most favorable to the State overwhelmingly supports the jury's finding that the defendant's conduct constituted a substantial step toward commission of statutory rape. . . . We would create a dangerous precedent by requiring that the defendant take delivery of the boy or actually begin some act that would approach sexual penetration. Once a pedophile purchases a child and takes the child into his possession, some damage has likely occurred. Moreover, the child is placed in a position of imminent danger from which the child may be powerless to protect himself or herself. State v. Fowler (Tenn. 1999),3 S.W.3d 910, 912-13.
 {¶ 41} Appellant contends in the case at bar that he told the police that he was not sure that he would have gone through with the sexual encounter with the child. However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary". Woods, supra, 48 Ohio St. 2d at 133.
 {¶ 42} Thus, considering the totality of the circumstances, this court finds that sufficient evidence supports the jury's finding that appellant took a substantial step toward the commission of the crime of statutory rape. This finding is in line with the majority of courts that have similarly concluded that arranging a meeting place for a sexual encounter and arriving there at the prearranged time are sufficient to constitute a substantial step in furtherance of a sex crime against a minor. See, e.g., U.S. v. Root(11th Cir. 2002), 296 F.3d 1222; Kirwan v. State(2003),351 Ark. 603, 96 S.W.3d 724; People v. Reed(1996), 53 Cal.App.4th 389,61 Cal.Rptr.2d 658; Dennard v. State(2000), 243 Ga.App. 868,534 S.E.2d 182; State v. Glass(Ct.App. 2003), 139 Idaho 815, 87 P.3d 302;People v. Scott (2000), 318 Ill.App.3d 46, 251 Ill.Dec. 630,740 N.E.2d 1201; People v. Patterson (2000), 314 Ill.App.3d 962, 248 Ill.Dec. 534, 734 N.E.2d 462; Van Bell v. State(1989), 105 Nev. 352,775 P.2d 1273; State v. Tarbay(2004), 157 Ohio App.3d 261,2004-Ohio-2721, 810 N.E.2d 979; State v. Schaefer(2003),155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872; State v. Priest,
Greene App. No. 2001 CA 108, 2002-Ohio-1892; Chen v. State(Tex.Crim.App. 2001), 42 S.W.3d 926; State v. Townsend(banc 2002), 147 Wash.2d 666,57 P.3d 255; State v. Grimm (Ct.App. 2002), 258 Wis.2d 166, 653 N.W.2d 284
.
 {¶ 43} Appellant was neither charged nor convicted based upon his speech about sex in general; nor does his conviction implicate any restriction of adults and minors communicating about sex. The appellant was not convicted for talking about engaging in sexual conduct with minors. The appellant was convicted for attempting to engage in sexual conduct with a minor. Such conduct is not protected by the First Amendment. Accordingly, appellant's First Amendment rights have not been abridged.
 {¶ 44} Appellant's First and Third Assignments of Error are overruled.
 II. {¶ 45} In his Second Assignment of Error appellant maintains that the trial court erred in overruling his motion to suppress the search of his vehicle. We disagree.
 {¶ 46} Appellant was placed under arrest as he was entering his van to leave the motel. (ST. at 17; 32). The police then inventoried and secured the vehicle pursuant to standard police procedure. (Id.). Inside the van the police discovered a red rose, a pink rose, a box of condoms, a hotel security lock and appellant's DJ equipment which was valued at approximately $15,000.00. (Id. at 43).
 {¶ 47} Warrantless inventory searches of automobiles are only permissible where the automobile has been legally impounded, and where the inventory search is not merely a pretext for an investigative search.South Dakota v. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000; State v. Robinson (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317, certiorari denied (1979), 444 U.S. 942,100 S.Ct. 297, 62 L.Ed.2d 309.
 {¶ 48} The inventory search does not violate the Fourth Amendment because appellant was lawfully arrested. The inventory search of appellant's car can be justified under the search-incident-to-arrest exception to the Fourth Amendment. That exception is limited to searches of persons, their personal effects, and the area within their immediate control. See, e.g., United States v. Robinson (1973), 414 U.S. 218,94 S.Ct. 467, 38 L.Ed.2d 427; Chimel v. California (1969), 395 U.S. 752,89 S.Ct. 2034, 23 L.Ed.2d 685, rehearing denied (1969), 396 U.S. 869,90 S.Ct. 36, 24 L.Ed.2d 124; and Illinois v. Lafayette (1983), 462 U.S. 640,103 S.Ct. 2605, 77 L.Ed.2d 65. Since appellant was in or near his van, it could be searched incident to his arrest.
 {¶ 49} Appellant's Second Assignment of Error is overruled.
 IV. {¶ 50} In his Fourth Assignment of Error appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 51} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained in C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 52} Revised Code § 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Revised Code § 2950.09(B) (3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 53} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 54} "(a) The offender's or delinquent child's age;
 {¶ 55} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 56} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 57} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 58} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 59} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 60} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 61} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 62} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 63} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 64} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. § 2950.09(C) (2) (b). Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."State v. Garcia (1998), 126 Ohio App.3d 485, 487.
 {¶ 65} In State v. Eppinger (2001), 91 Ohio St.3d 158, 2001-Ohio-247,743 N.E.2d 881, the Court noted; "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." Id. at 162, 743 N.E.2d at 881. The Court cautioned, however, "[b]ut a person who has been convicted of or who has pled guilty to committing one sexually oriented offense is not necessarily likely to engage in the future in one or more sexually oriented offenses. One sexually oriented offense is not a clear predictor of whether that person is likely to engage in the future in one or more sexually oriented offenses, particularly if the offender is not a pedophile. Thus, we recognize that one sexually oriented conviction, without more, may not predict future behavior." (Id).
 {¶ 66} However, "substantial evidence exists which indicates that child sex offenders are generally serial offenders. Specifically, in considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated: `Evidence suggests that child sex offenders are generally serial offenders. Indeed one recent study concluded the `behavior is highly repetitive, to the point of compulsion,' and found that 74 percent of imprisoned child sex offenders had one or more prior sexual offenses against a child.' See H.R. Rep. No. 392, 103rd Congress (1993). Furthermore, in State v. Eppinger, supra, the Supreme Court stated: "Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
 {¶ 67} "Furthermore, the United States Supreme Court, in McKune v.Lile (2002), 536 U.S. 24, 32-33, 122 S.Ct. 2017, 153 L.Ed.2d 47, stated `the victims of sex assault are most often juveniles,' and `[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.
 {¶ 68} "In accordance, we can only conclude that the lower court wasfree to give due deference to the statistical likelihood of appellant'sreoffending . . . Although the Ohio Supreme Court in Eppinger, supra, did not establish a bright-line rule that courts can rely solely on statistical evidence in making a sexual predator determination, it nevertheless endorsed the lower court's ability to give due weight to a statistical likelihood that sexual offenders of children are likely to reoffend when conducting its sexual predator determination.
 {¶ 69} "Further, in drafting R.C. Chapter 2950, the legislature recognized the existing statistical evidence, which overwhelmingly indicates that recidivism among pedophile offenders is highest. As stated in State v. Ellison, supra, the General Assembly passed the sexual predator laws in part because sexual predators `pose a high risk of engaging in further offenses even after being released from imprisonment.' Moreover, the United States Supreme Court has recognized that, statistically, convicted sex offenders who reenter society are much more likely than any other type of offender to be rearrested for a new rape or sex assault. McKune, supra." State v. Purser (2003), 153 Ohio App.3d 144,151-52, 2003-Ohio-3345 at ¶ 39-40, 791 N.E.2d 1053, 1058-59.
 {¶ 70} In the case at bar, the trial court noted that the age of the intended victim was twelve. Appellant admitted that the picture he had received of the intended victim portrayed a child between the ages of ten and twelve years old. (T. at 144-45). "The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct." State v. Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported. The trial court further heard evidence regarding appellant's admission to possession of child pornography and his predilection to visit chat rooms geared toward people with an interest in children as sexual objects. (3T. at 284-85). The court further heard evidence prior to sentencing that appellant's computer was seized and searched together with a notebook containing web sites that appellant had visited using the code word "Lolita" which is a phrase for individuals looking for photos of young children. (Id. at 286).
 {¶ 71} A review of the record shows that sufficient evidence exists to demonstrate that appellant is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 72} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 73} In his Fifth Assignment of Error appellant argues that the trial court erred in imposing the maximum sentence. We disagree.
 {¶ 74} R.C. 2929.14(B) generally requires a court to make definite findings in order to lawfully impose a sentence that is greater than the minimum upon offenders with no history of imprisonment. State v.Edmonson (1999), 86 Ohio St.3d 324,325, 715 N.E.2d 131. Appellant in the case at bar does not have a prior record.
 {¶ 75} However, "R.C. 2929.14(B) is inapplicable where a maximum sentence is imposed for a single offense, provided that the record reflects that the court based the sentence upon at least one R.C.2929.14(C) criterion." State v. Evans (2004), 102 Ohio St.3d 240,2004-Ohio-2659 at syllabus.
 {¶ 76} R.C. 2929.14(C) sets forth the following conditions under which a trial court may impose a maximum sentence: "(C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D) (3) of this section, and upon certain repeat violent offenders in accordance with division (D) (2) of this section." We read this statute in the disjunctive. See State v. Comersford (June 3, 1999), Delaware App. No. 98CA01004. Consequently, a maximum sentence may be imposed if the trial court finds any of the above-listed offender categories apply. Additionally, a trial court must state its reasons supporting an R.C.2929.14(C) maximum sentence finding. R.C. 2929.19(B) (2) (d).
 {¶ 77} Based on the discussion of Appellant's Fourth Assignment of Error, this court finds that the evidence presented was sufficient to support a finding that appellant committed the worst form of the offense, and further that appellant poses the greatest likelihood of committing future crimes.
 {¶ 78} Accordingly, appellant's Fifth Assignment of Error is overruled. {¶ 79} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.
By Gwin, J., Boggins, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed. Costs to appellant.