OPINION
{¶ 1} This case arose when appellant Dennis Haddox, a 48-year-old school bus driver, met a 12-year-old girl on his bus and began mailing CDs and letters to her. Detective Bobby Grizzard assumed the identity of the 12-year-old victim, and appellant's communications expanded to include graphic sexually explicit photographs and descriptions of sexual acts that appellant wanted to perform with "her." The conduct culminated when appellant approached the victim's home in an attempt to meet with her.
 {¶ 2} Appellant was charged by indictment with one count of importuning, a felony of the fourth degree in violation of R.C.2907.07(C) (2), two counts of disseminating matter harmful to juveniles, both felonies of the fourth degree in violation of R.C. 2907.31(A) (1), and one count of attempted child enticement, a misdemeanor of the second degree in violation of R.C.2923.02(A). The amended indictment and bill of particulars state that Count One (importuning) occurred as a continuous course of conduct from on or about March 22, 2005 to on or about March 30th, 2005. Count Two (disseminating matter harmful to juveniles) occurred on March 27, 2005, and Count Three (disseminating matter harmful to juveniles) occurred on March 28, 2005. Count Four, attempted child enticement, occurred on or about March 30, 2005.
 {¶ 3} The record of this case indicates that voluminous pretrial motions were filed and argued. Discovery was exchanged. The State provided appellant with 80 pages of Internet chats and instant messages that took place between appellant and the victim/undercover officer from March 22, 2005 to March 30, 2005. The defense was also provided with 18 pages downloaded from a pornographic website which appellant sent to the victim, and an additional 6 pages of adult pornography sent by appellant to the victim. Images sent by appellant on March 27, 2005 included pictures of a male penis. Images sent by appellant on March 28, 2995 included images of sexual activity.
 {¶ 4} On December 13, 2005 appellant entered guilty pleas to the charges set forth in the Indictment. The trial court deferred sentencing and ordered a pre-sentence investigation report be prepared.
 {¶ 5} At the sentencing and classification hearing on January 30, 2006, the trial court noted that it had viewed a DVD of images from appellant's computer. The DVD contained images of child pornography. While the trial court noted that the DVD would not be taken into account in sentencing appellant, it would be considered in weighing whether appellant should be classified as a sexually oriented offender or a sexual predator. In the court's estimation, the DVD was relevant to R.C. 2950.09(B) (3) (j), "[a]ny additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."'
 {¶ 6} The defense moved to merge counts two and three, disseminating matter harmful to juveniles, for the purpose of sentencing. The defense also argued that appellant suffered from a "disease of sexual addiction" which would require treatment.
 {¶ 7} The trial court noted the following facts leading up to the pronouncement of sentence and classification. Appellant sent the 12-year-old victim, or whom he believed to be the victim, multiple images of "the male sex organ fully aroused," in addition to "information about clitoris, anal sex techniques and positions, new discoveries, discussion of orgasms, G-spots, medications that are available, pictures of the female genitalia, and pictures of men and women engaging in intercourse." (T. at 26-27). The court continued,
 {¶ 8} "This was all sent at the same time that there was a discussion of what is your favorite drink. Cherry Coke. When he was arrested he had Cherry Coke for the young girl.
 {¶ 9} "There was also very (sic) graphic description of what he wanted to do and what he wanted her to do. It all started with — I'm not going to attempt to quote it — but I admired you when you were on my bus. He was a bus driver.
 {¶ 10} "Every time the children got on the bus or got off the bus, he was watching her. Was he watching them to make sure that cars were not going to hit them? Was he watching them to make sure that they are going to be safe, that there was someone there to pick them up from the bus stop, or was it someone that he was going to be able to go and meet?
 {¶ 11} "We certainly know what he was doing when he watched this young lady, a twelve year old girl". (T. at 26-28).
 {¶ 12} In sentencing appellant, the trial court noted its particular concern with appellant's employment as a school bus driver, having put himself in the position of meeting children and preying upon them for his own sexual gratification. (Id. at 30). The defense clarified that no reported offenses occurred while appellant was still employed as the victim's bus driver, but the trial court responded that in the communications, appellant referenced seeing the victim on his bus. (T. at 32-33).
 {¶ 13} The State presented the following facts at the classification hearing. Appellant was age 48 and the victim was age 12 when the conduct began. Although there was only one known victim, police found names and addresses of two other 12-year-old students at appellant's home with the DVD of child pornography. Appellant had no prior history and no known mental illness. (T. at 37).
 {¶ 14} The State requested that appellant be labeled a child-victim predator, but the trial court overruled this request. (T. at 38; 48).
 {¶ 15} The trial court did, however, label appellant a sexual predator, and made the following findings:
 {¶ 16} "Everyone is in agreement on the age, the fact of whether alcohol was or was not, it was not used in this case. The lack of mental illness. The lack of prior record.
 {¶ 17} "But what I keep coming back to is his position. He purposely put himself into that position, he purposely used it in his gaining of the confidence of this individual. It was specifically orchestrated, organized to gain that confidence to build upon the relationship which he had with her as the bus driver.
 {¶ 18} "Whether it was true or not, he represented that he was her bus driver, and the contents of this disk, the child pornography, children engaging in sexual activity, children in provocative poses. That falls under any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 19} "The Court finds by clear and convincing evidence that the Defendant, Mr. Haddox, is likely to engage in the future in one or more sexually oriented offenses. The Court does designate him as a sexually oriented offender. [sic]" (T. 44-46).
 {¶ 20} The trial court then clarified that appellant is in fact a sexual predator. (T. at 48).
 {¶ 21} The trial court sentenced appellant to a term of eight months and a fine of $1,500.00 and court costs on the charge of importuning; a term of 17 months each on the two counts of disseminating mater harmful to juveniles and a term of 60 days in the Stark County Jail on the misdemeanor charge of attempt to commit the offense of child enticement. The trial court ordered that the felony sentences be served consecutive to each other but concurrent with the misdemeanor charge for an aggregate prison sentence of 42 months.
 {¶ 22} It is from his convictions, sentences and classification as a sexual predator that appellant has timely appealed raising the following assignments of error:
 {¶ 23} "I. THE TRIAL COURTS [sic.] CLASSIFICATION OF THE DEFENDANT AS A SEXUAL PREDATOR IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE IN THE RECORD.
 {¶ 24} "II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO MERGE FOR THE PURPOSE OF SENTENCING THE TWO(2) COUNTS OF DISSEMINATING MATTERS HARMFUL TO JUVENILES FOR WHICH APPELLANT PLEAD GUILTY, AS SUCH OFFENSES CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT AS DEFINED BY R.C. 2941.25."
 I. {¶ 25} In his first assignment of error, appellant claims the trial court's classification of him as a "sexual predator" was not supported by clear and convincing evidence. We disagree.
 {¶ 26} Ohio's sex-offender registration scheme provides for three classes of sex offenders: habitual sex offenders, sexual predators, and sexually oriented offenders. See R.C. 2950.09; see, also, State v. Williams, 88 Ohio St.3d 513, 518, 2000-Ohio 428, 728 N.E.2d 342, certiorari denied sub nom. Suffecool v.Ohio (2000), 531 U.S. 902, 121 S.Ct. 241, 148 L.Ed.2d 173.
 {¶ 27} In State v. Hayden (2002), 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502 the Ohio Supreme Court noted: "R.C. 2950.01(B) defines a `habitual sex offender' as a person who `is convicted of or pleads guilty to a sexually oriented offense' and who `previously has been convicted of or pleaded guilty to one or more sexually oriented offenses.' R.C.2950.01(B) (1) and (2). In the case of an adult, R.C. 2950.01(E) defines a `sexual predator' as a person who `has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.' Finally, the least restrictive designation that of a `sexually oriented offender,' is not specifically defined in R.C. Chapter 2950. However, we have explained that a `sexually oriented offender' is a person `who has committed a `sexually oriented offense' as that term is defined in R.C.2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator.' Cook, supra,83 Ohio St.3d at 407, 700 N.E.2d 570; Williams, supra,88 Ohio St.3d at 519, 728 N.E.2d 342". Id. at 213, 2002-Ohio-4169 at ¶ 9,773 N.E.2d at 504.
 {¶ 28} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio determined R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review this assignment of error under the standard of review contained inC.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. The civil standard has been applied to the trial court's determination that a particular offender is a sexual predator. See, e.g., State v. Tillery, Cuyahoga App. No. 79166, 2002-Ohio-1587; State v. Childs (2001), 142 Ohio App.3d 389,395, 755 N.E.2d 958; State v. Wilkerson (2000),138 Ohio App.3d 861, 742 N.E.2d 716; State v. Gerhardt, Clark App. No. 00CA0090, 2001-Ohio-1470; State v. Scott, Logan App. No. 8-2000-26, 2001-Ohio-2107; State v. Hood, Washington App. No. 00CA51, 2001-Ohio-2620; State v. Cooper, Muskingum App. No. CT2001-0013, 2001-Ohio-1676; State v. Parsons (Aug. 17, 2001), Huron App. No. H-00-042. Thus "if there is competent, credible evidence to support the factual findings of the trial court, we review only whether, after weighing the evidence and resolving evidentiary conflicts and issues of credibility, the trial court properly applied the governing law to those factual findings".State v. Griggs, 12th Dist. No. CA2001-08-194, 2002-Ohio-4375 at ¶ 5. In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." In the case at bar, we find that the trial court properly applied the law to the factual findings.
 {¶ 29} A "sexual predator" is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E); State v.Eppinger (2001), 91 Ohio St.3d 158, 163, 2001-Ohio-247,743 N.E.2d 881, 886.
 {¶ 30} In State v. Hayden (2002), 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502, the Ohio Supreme Court held; "the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of Section 16, Article I of the Ohio Constitution do not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender. Instead, according to R.C. Chapter 2950, if a defendant has been convicted of a sexually oriented offense as defined in R.C.2950.01(D) and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law. Id. at 215, 2002-Ohio-4169 at ¶ 15,773 N.E.2d at 506. Appellant pled guilty to, among other charges, one count of Importuning in violation of R.C. 2907.07(C) (2). This is a sexually oriented offense. R.C. 2950.01(D) (1) (a). Accordingly, the only remaining issue before the trial court was whether the appellant is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 31} R.C. 2950.09(B) (3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 32} "(3) In making a determination . . . as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 33} "(a) The offender's or delinquent child's age;
 {¶ 34} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 35} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 36} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 37} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 38} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 39} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 40} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 41} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 42} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 43} The trial court shall determine an offender to be a sexual predator only if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C) (2) (b). Clear and convincing evidence is evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." State v.Garcia (1998), 126 Ohio App.3d 485, 487. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less than that which constitutes "beyond a reasonable doubt." State v. Danby (1983), 11 Ohio App.3d 38,41, 463 N.E.2d 47, citing Cross, 161 Ohio St. at 477,120 N.E.2d 118.
 {¶ 44} In State v. Eppinger, supra, the Ohio Supreme Court set forth the requirements for conducting a sexual predator hearing. Of relevance to the case at bar, the Court noted "[f]inally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. See State v. Thompson, supra. See, also, State v. Russell
(Apr. 8, 1999), Cuyahoga App. No. 73237, unreported,1999 WL 195657; State v. Casper (June 10, 1999), Cuyahoga App. Nos. 73061, 73064, 73062 and 73063, unreported, 1999 WL 380437". Id. at 166, 743 N.E.2d at 889.
 {¶ 45} The trial court has significant discretion in evaluating factors that may be relevant to its recidivism determination and such determinations are to be afforded great deference. State v. Robertson, 147 Ohio App.3d 94,2002-Ohio-494, 768 N.E.2d 1207. The court has discretion to determine what weight, if any, it will assign to each statutory guideline. State v. Thompson, 92 Ohio St.3d 584,2001-Ohio-1288, 752 N.E.2d 276. The trial court does not need to find a majority of the R.C. 2950.09(B)(2) factors to support a sexual predator determination; rather, an appellant may be so adjudicated even if only one or two of the factors are present as long as the totality of the circumstances provides clear and convincing evidence that the appellant is likely to commit a sexually oriented offense in the future. State v. Murphy, 11th Dist. No. 2003-L0-49, 2005-Ohio-412 at ¶ 41. As the Ohio Supreme Court put it, a "judge must consider the guidelines set out in R.C. 2950.09(B)(2), but the judge has discretion to determine what weight, if any, he or she will assign to each guideline. Pursuant to R.C. 2950.09(B) (2), a judge may also consider anyother evidence that he or she deems relevant to determining thelikelihood of recidivism." (Emphasis added.) State v. Thompson
(2001), 92 Ohio St.3d 584, 752 N.E.2d 276, paragraph one of the syllabus; State v. Purser (2003), 153 Ohio App.3d 144, 151,2003-Ohio-3345 at ¶ 34, 791 N.E.2d 1053, 1058.
 {¶ 46} "To determine whether the trial court's finding of the offender's likelihood of re-offending is supported by clear and convincing evidence, an appellate court must conduct its own review of `the evidence in the transcripts, victim impact statements, pre-sentence investigation reports, prior history of arrests and convictions, age, etc., presented at the sexual offender classification hearing with respect to R.C. 2950.09(B) (2) factors.'" State v. Crooks (2003), 152 Ohio App.3d 294,303, 2003-Ohio-1546 at ¶ 27, 787 N.E.2d 678, 685. [Quoting Statev. Eppinger, 91 Ohio St.3d at 162, 743 N.E.2d 881]; State v.Sharp, 10th Dist. No. 05 AP-809, 2006-Ohio-3448 at ¶ 13.
 {¶ 47} In State v. Eppinger (2001), 91 Ohio St.3d 158,2001-Ohio-247, 743 N.E.2d 881, the Court noted; "under certain circumstances, it is possible that one sexually oriented conviction alone can support a sexual predator adjudication." Id. at 162, 743 N.E.2d at 881. The Court cautioned, however, "[b]ut a person who has been convicted of or who has pled guilty to committing one sexually oriented offense is not necessarily likely to engage in the future in one or more sexually oriented offenses. One sexually oriented offense is not a clear predictor of whether that person is likely to engage in the future in one or more sexually oriented offenses, particularly if the offender is not a pedophile. Thus, we recognize that one sexually oriented conviction, without more, may not predict future behavior." (Id).
 {¶ 48} However, "substantial evidence exists which indicates that child sex offenders are generally serial offenders. Specifically, in considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated: `Evidence suggests that child sex offenders are generally serial offenders. Indeed one recent study concluded the `behavior is highly repetitive, to the point of compulsion,' and found that 74 percent of imprisoned child sex offenders had one or more prior sexual offenses against a child.' See H.R. Rep. No. 392, 103rd Congress (1993). Furthermore, in State v. Eppinger, supra, the Supreme Court stated: `Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters.' Comparet-Cassani, A Primer on the Civil Trial of a Sexually Violent Predator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky, Recidivism Rates Among Child Molesters and Rapists: A Methodological Analysis (1997), 21 Law Human Behavior 635, 651.
 {¶ 49} "Furthermore, the United States Supreme Court, inMcKune v. Lile (2002), 536 U.S. 24, 32-33, 122 S.Ct. 2017,153 L.Ed.2d 47, stated `the victims of sex assault are most often juveniles,' and `[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.
 {¶ 50} "In accordance, we can only conclude that the lower court was free to give due deference to the statistical likelihood of appellant's re-offending . . . Although the Ohio Supreme Court in Eppinger, supra, did not establish a bright-line rule that courts can rely solely on statistical evidence in making a sexual predator determination, it nevertheless endorsed the lower court's ability to give due weight to a statistical likelihood that sexual offenders of children are likely to re-offend when conducting its sexual predator determination.
 {¶ 51} "Further, in drafting R.C. Chapter 2950, the legislature recognized the existing statistical evidence, which overwhelmingly indicates that recidivism among pedophile offenders is highest. As stated in State v. Ellison, supra, the General Assembly passed the sexual predator laws in part because sexual predators `pose a high risk of engaging in further offenses even after being released from imprisonment.' Moreover, the United States Supreme Court has recognized that, statistically, convicted sex offenders who reenter society are much more likely than any other type of offender to be rearrested for a new rape or sex assault. McKune, supra." State v.Purser (2003), 153 Ohio App.3d 144,151-52, 2003-Ohio-3345 at ¶ 39-40, 791 N.E.2d 1053, 1058-59.
 {¶ 52} In State v. Blake, 5th Dist. No. 2004CA00122,2005-Ohio-19 this Court noted "`[g]enerally, if a very young child is molested, age is a strong factor because our society has taboos against sexual contact between adults and young children. Therefore, an adult who violates society's norms by preying upon the young has a deeply-rooted problem and a high statistical potential for recidivism.' State v. Bradley (June 19, 1998), Montgomery App. Nos. 16662, 16664, citing State v. Condron
(March 27, 1998), Montgomery App. No. 16430. This Court has also emphasized the inherent gravity of sexual offenses against minors: `The overwhelming statistical evidence support[s] the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children. The age of the victim is probative because it serves as a telling indicator of the depths of [the] offender's inability to refrain from such illegal conduct.' State v. Jones (July 23, 2001), Stark App. No. 2000CA00350, quoting State v. Maynard (1999),132 Ohio App.3d 820, 826, 726 N.E.2d 574. See, also, State v. Covill, Stark App. No. 2001CA00074, 2001-Ohio-1679". Blake, supra. at ¶ 9.
 {¶ 53} The sexual abuse of young children is widely viewed as one of the most reprehensible crimes in our society. State v.Daniels (Feb. 24, 1998), Franklin App. No. 97APA06-830, unreported. "Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable." Id.
 {¶ 54} In the case at bar, the trial court found that appellant was forty-eight years old at the time of the offense. (T. January 30, 2006 at 39). [R.C. 2950.09(B) (2) (a)]. The trial court did consider that the "victim" in the case at bar was twelve years old. (Id. at 27). [R.C. 2950.09(B) (2) (c)]. The trial court further heard evidence regarding appellant's admission to possession of child pornography. The court further heard evidence prior to sentencing that appellant's computer was seized and searched and contained over 200 images of child pornography. (Id. at 9). The court further found that appellant occupied a position of trust with respect to the victim. (Id. at 45). Although appellant was not the driver of the school bus on which the victim rode at the time of the offense, appellant obtained the victims address from the time he was so employed. Further, appellant used his former position to gain the child's trust as evidence by his internet messages. Taking advantage of a position of trust with younger victims supports a sexual predator finding. See State v. Messer, Franklin App. No. 03AP-169,2004-Ohio-2127, at ¶ 17; State v. Sharp, supra at ¶ 12; Statev. Carter (Aug. 9, 2001), 10th Dist. No. 00AP-1365.
 {¶ 55} As this court has noted: "[t]hat a dangerous crime against children could not have been completed because no twelve year old child was actually involved is of no consequence; `It is no defense . . . that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be. R.C. 2923.02(B). All that is required to commit [the offense] against a child under the age of thirteen is for the perpetrator to believe that the intended victim is a minor under thirteen years of age, and then to take any substantial step in a course of conduct planned to culminate in the commission of the crime. As the federal courts have noted when addressing similar claims: `[t]he attempt provision here is no different than an attempted solicitation of prostitution, where the criminal conduct is the knowing effort to solicit an individual for prostitution. That the individual turns out to be a decoy undercover officer does not vitiate the criminal conduct — indeed, such sting operations are "common practice." Rodriguezv. Panayiotou, 314 F.3d 979, 984 (9th Cir. 2002).
 {¶ 56} "So too have undercover officers been forced to resort to extensive investigation and sting operations to ferret out pedophiles who troll the Internet for minors. As [appellant] interprets the statute, detectives and undercover officers would be unable to police effectively the illegal inducement of minors for sex. Taking such a restrictive view of the statute would frustrate its purpose. Indeed, police preventative measures such as the sting operation conducted here would come at the cost of either rarely securing a conviction or putting an actual child in harm's way. In that scenario, the child molester gains at the tremendous expense of the child, a result sharply at odds with the statute's text and purpose.' State v. Meeks (9th Cir 2004),366 F.3d 705, 7187-19". State v. Ashbrook, 5th Dist. No. 2004-CA-00109, 2005-Ohio-740 at ¶ 32-33, reversed on other grounds In re Ohio Criminal Sentencing Statutes Cases (2006),109 Ohio St.3d 313, 847 N.E.2d 1174.
 {¶ 57} The Court further noted that found during the search of appellant's home were the names and addresses of two former students also twelve years of age. (Id. at 37).
 {¶ 58} Appellant presented no evidence that demonstrates he has sought treatment or help concerning his predilection. Nor was any psychological evidence present by appellant to demonstrate that he is not at risk to re-offend.
 {¶ 59} Accordingly, based on the foregoing, we find that the trial court considered the elements set forth in R.C. 2950.09(B) (3) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the sentencing hearing. We further find that the evidence presented to the trial court at the hearing supports the finding that appellant is a sexual predator and is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 60} Appellant's first assignment of error is overruled.
 II. {¶ 61} In his second assignment of error appellant argues that the trial court erred in failing to merge the two counts of disseminating matter harmful to juveniles because the offenses are allied offenses of similar import. We disagree.
 {¶ 62} R.C. 2941.25 reads as follows:
 {¶ 63} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 64} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 65} In considering whether offenses are allied offenses of similar import, the Ohio Supreme Court has held that rather than analyzing the offenses in light of the specific facts of the case, the elements of the offenses are to be compared in the abstract. State v. Rance (1999), 85 Ohio St.3d 632,710 N.E.2d 699.
 {¶ 66} In State v. Cooper the Ohio Supreme Court clarified its previous holdings concerning allied offenses: ". . . a court need only engage in the allied-offense analysis when the same conduct, or single act, results in multiple convictions. We emphasized that point in State v. Logan (1979),60 Ohio St.2d 126, 128, 14 O.O.3d 373, 397 N.E.2d 1345: `In addition to the requirement of similar import of the crimes committed, the defendant, in order to obtain the protection of R.C. 2941.25(A),must show that the prosecution has relied upon the same conductto support both offenses charged.' (Emphasis added.).
 {¶ 67} "We further elaborated in State v. Jones (1997),78 Ohio St.3d 12, 14, 676 N.E.2d 80, where we stated:
 {¶ 68} "`This court has generally not found the presence or absence of any specific factors to be dispositive on the issue of whether crimes were committed separately or with a separate animus. * * * Instead, our approach has been to analyze the particular facts of each case before us to determine whether the acts or animus were separate. See State v. Nicholas (1993),66 Ohio St.3d 431, 435, 613 N.E.2d 225, 229; State v. Hill (1992),64 Ohio St.3d 313, 332, 595 N.E.2d 884, 899-900; State v. Jells
(1990), 53 Ohio St.3d 22, 33, 559 N.E.2d 464, 475; Newark v.Vazirani (1990), 48 Ohio St.3d 81, 83-84, 549 N.E.2d 520, 522;State v. Powell (1990), 49 Ohio St.3d 255, 262, 552 N.E.2d 191,199.'
 {¶ 69} "In Logan, we held that an offender must demonstrate the state's reliance on the same conduct to prove multiple charges before gaining the protection of R.C. 2941.25".104 Ohio St.3d 293, 296-297, 2004-Ohio-6553 at ¶ 17-20, 819 N.E.2d 657,660-661.
 {¶ 70} In the case sub judice, as we are persuaded the offenses in question were each committed with a separate animus. R.C. 2941.25(B). Further, the state did not rely upon the same conduct to prove the two offenses.
 {¶ 71} In State v. Poissant, this Court observed: "[a]ppellant entered a plea of guilty to the instant offense, thereby waiving all rights to present evidence to challenge the factual basis underlying the charged offenses. Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does the defendant who pleads guilty to two counts having facial allegations of distinct offenses concede that he has committed two separate crimes. United States v.Broce (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927. Having entered a plea of guilty to two separate counts of rape, appellant cannot now allege that the court should have held an evidentiary hearing to flesh out the facts underlying the crimes". In the case at bar, appellant entered guilty pleas, after executing a writing change of plea form, to two separate counts of disseminating matters harmful to juveniles. When the appellant pleaded guilty, he waived his right to present evidence challenging the two separate charges.
 {¶ 72} Appellant argues in this assignment of error that the internet conversations involved the same victim and that the conversations were actually one prolonged solicitation, rather than distinct incidents. We do not agree with the appellant's contentions.
 {¶ 73} R.C. 2907.31(A) (1) disseminating matter harmful to juveniles provides:
 {¶ 74} "No person, with knowledge of its character or content, shall recklessly do any of the following:
 {¶ 75} "(1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile, a group of juveniles, a law enforcement officer posing as a juvenile, or a group of law enforcement officers posing as juveniles any material or performance that is obscene or harmful to juveniles . . ."
 {¶ 76} The record in the case at bar establishes that on March 27, 2005 the appellant sent pictures of an erect male penis and a link to a "clitoris" web site to the undercover officer posing as the twelve year old girl. (See, Logs of Internet chats/instant messages, March 27, 2005). On that date he further transmitted a sexually explicit description of his own sexual fantasy concerning the "victim" and himself. On March 28, 2005 appellant transmitted photographs of young girls engaged in sexual activity to the "victim." (See, Logs of Internet chats/instant messages, March 28, 2005). Accordingly, the dissemination occurred on separate days and involved different materials. It is clear that the appellant contacted the "child"/agent on separate occasions and forward distinct materials on each occasion. Thus the appellant engaged in two distinct acts each with its own separate animus. The State did not rely upon the same conduct to prove multiple charges. Statev. Cooper, supra. As this was not a case where a single act resulted in multiple convictions merger of the two offenses was properly denied by the trial court.
 {¶ 77} In sum, our review of the record demonstrates that the evidence supports appellant's conviction on counts two and three. Appellant has failed to produce clear and convincing evidence that the trial court erred in sentencing him on two counts of disseminating matter harmful to juveniles. Under the circumstances, both counts of disseminating matter harmful to juveniles are based on separate and distinct acts each with its own independent animus. Consequently, the trial court did not err in sentencing the appellant on both counts to consecutive terms of seventeen months respectively.
 {¶ 78} Therefore, appellant's second assignment of error is overruled.
 {¶ 79} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
By Gwin, J., Wise, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.